572 S.E.2d 876

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Richard A. SEENES, Defendant Below, Appellant.

No. 30409.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 4, 2002.

Decided Oct. 11, 2002.

Heather Ireland Molessa, Law Office of Heather Ireland Molessa, West Union, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

PER CURIAM:

Richard A. Seenes, appellant/defendant below (hereinafter referred to as "Mr. Seenes"), entered a conditional plea of guilty to four counts of breaking and entering in the Circuit Court of Doddridge County, West Virginia. Under his conditional plea, he reserved the right to appeal the circuit court's denial of his motion to dismiss the charges against him under Articles III(a) and V(c) of the Interstate Agreement on Detainers Act, W. Va.Code § 62–14–1 (2000).[1] After reviewing the briefs, the pertinent authorities, and hearing oral argument, we reverse the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Seenes was indicted on February 14, 2000, by the Doddridge County Grand Jury for five felony counts of breaking and entering in violation of West Virginia Code § 61–3–12 (2000), and one misdemeanor count of destruction of personal property in violation of West Virginia Code § 61–3–30 (2000). The specific conduct for which Mr. Seenes was indicted involved his breaking into several storage units by destroying a number of locks and/or hasps, and absconding with a number of goods from these storage sheds collectively valued in excess of $7,000.00.

Shortly thereafter, however, criminal proceedings against Mr. Seenes in the State of Ohio resulted in him being convicted and sentenced to four years and six months of imprisonment in that state. Consequently, Mr. Seenes was incarcerated in the Belmont Correctional Institution (hereinafter referred to as "BCI") in St. Clairsville, Ohio. Thereafter, on May 2, 2000, the Doddridge County Prosecuting Attorney apparently filed a detainer with BCI against Mr. Seenes. BCI's warden then advised Mr. Seenes in writing of the pending West Virginia indictment.

Mr. Seenes subsequently caused to be delivered to the Doddridge County Circuit Court and the Doddridge County Prosecuting Attorney his request for a final disposition of the indictment. Both the State and Mr. Seenes agree that the Doddridge County Prosecuting Attorney received Mr. Seenes' request for disposition on June 6, 2000.

On October 5, 2000, the circuit court directed that Mr. Seenes be taken into the custody of the West Virginia authorities. The court then arraigned Mr. Seenes on October 11, 2000. During the course of the arraignment proceedings, the circuit court noted that Mr. Seenes was serving a prison sentence in Ohio, and also appointed counsel for him. With appointed counsel present at the arraignment, Mr. Seenes pled not guilty to all counts in the indictment. The State then informed the circuit court that it desired a trial. In reply, the circuit court advised that jury selection would commence on January 2, 2001, thus indicating that the trial would likely be held sometime in January. A pre-trial conference was set for December 29.

---

1. Mr. Seenes maintained his innocence, but entered his plea as permitted by *Kennedy v. Frazier,* 178 W.Va. 10, 12, 357 S.E.2d 43, 45 (1987) (following *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and holding that a court does not violate due process by accepting a guilty plea from a defendant who continues to protest innocence provided the court is satisfied a factual basis for the plea exists independent of the defendant's statements). Justice Cleckley discussed the difference between *Alford* pleas and conditional pleas in his concurring opinion *State v. Lilly,* 194 W.Va. 595, 605 n. 2, 461 S.E.2d 101, 111 n. 2 (1995) (Cleckley, J., concurring). Mr. Seenes raises no issue based on his *Alford* plea.

Also during the arraignment, the prosecuting attorney indicated that Mr. Seenes was ineligible for bail as he was "incarcerated in the penitentiary in Ohio." For this reason, the circuit court refused bail specifically citing the Interstate Agreement on Detainers (hereinafter referred to as "the IAD"). Furthermore, when the prosecuting attorney indicated to the court that he believed a plea agreement would be reached, the court set the anticipated plea hearing for October 31, 2000.[2] Sometime after arraignment, though, the circuit court was informed that plea negotiations had been terminated and that the October 31 hearing date would not be needed.[3]

On December 7, 2000, Mr. Seenes filed a motion to dismiss the indictment claiming that the failure to try him by December 3 (180 days after the prosecuting attorney received Mr. Seenes' request for final disposition on June 6) violated the IAD and mandated dismissal of the indictment with prejudice. The circuit court heard argument on the motion on December 29, 2001, which was the date originally set for the pre-trial conference. At the hearing on the motion, the circuit court reserved ruling until it could review the arraignment transcript. The court then denied the motion from the bench on January 8, 2001. The circuit court ruled that Mr. Seenes' did not object to the trial date and that the setting of the plea hearing tolled the IAD's time frame. Subsequently, on that same day, Mr. Seenes entered a conditional plea of guilty to the first four counts of the indictment (four counts of breaking and entering), and was sentenced to one to ten year terms on each count.[4] The conditional guilty plea specifically reserved

his right to seek appellate review of the denial of his motion to dismiss. It is from this order that Mr. Seenes now appeals.

## II.

### STANDARD OF REVIEW

■■■ This case involves the IAD, a statute we have previously addressed on several occasions. *See State v. Gamble*, 211 W.Va. 125, 128, 563 S.E.2d 790, 793 (2001) ("We have been asked to interpret the state's obligations under the IAD on several occasions[.]"), *cert. denied*, 535 U.S. 1065, 122 S.Ct. 1935, 152 L.Ed.2d 840 (2002). The IAD is statutory law. We have long recognized that, "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995). Thus, we will apply a *de novo* standard of review to the issues herein presented. *Accord State v. Somerlot*, 209 W.Va. 125, 128, 544 S.E.2d 52, 55 (2000). We are also cognizant that the IAD is an interstate compact, *State ex rel. Maynard v. Bronson*, 167 W.Va. 35, 38, 277 S.E.2d 718, 720 (1981), to which West Virginia is " 'a party by statutory enactment.' " *Somerlot*, 209 W.Va. at 128, 544 S.E.2d at 55 (quoting *State ex rel. Modie v. Hill*, 191 W.Va. 100, 102, 443 S.E.2d 257, 259 (1994)).[5] Furthermore, as federal law, the IAD is subject to " 'federal construction.' " *Id.* 544 S.E.2d at 55 (quoting *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516, 520 (1985)).

---

2. The circuit court first offered October 25 as a possible plea date. This date, however, proved unworkable as Mr. Seenes' counsel informed the court that she believed Mr. Seenes had a sentencing hearing in Ohio on that day.

3. A handwritten note, bearing no letterhead and no date, but filed with the circuit clerk on December 29, 2000, reads, "Melinda called from Heather's Office @ 2:40 p.m. 10-27-00 and said there would be *no hearing* on Richard Seenes on 10-31-00."

4. The circuit court ordered count I to run consecutive to count II so Mr. Seenes would serve not less than two nor more than twenty years of

the two convictions. The circuit court further ordered that the conviction under count III should run concurrently to count IV, and that counts III and IV should run concurrently with the consecutive sentences under counts I and II. The circuit court further ordered the West Virginia sentences should result in a total sentence of not less than two nor more than twenty years and the West Virginia sentence should run concurrently with Mr. Seenes' Ohio sentence. The circuit court also ordered Mr. Seenes to pay restitutions to his victims in an aggregate amount of $4,402.50.

5. *See* W. Va.Code §§ 62–14–1 to –7 (2000).

## III.

## DISCUSSION

Article III(a) of the IAD provides, in pertinent part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment ... on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment ...: Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

■ In addition, Article V(c) of the IAD provides, in pertinent part:

[I]n the event that an action on the indictment ... on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III ... hereof, the appropriate court of the jurisdiction where the indictment ... has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

It is also worth noting that, under its own terms, the IAD is to be given a liberal construction to effect its purposes. Art. IX ("This agreement shall be liberally construed so as to effectuate its purposes.").

Mr. Seenes contends that the 180–day provision of Article III of the IAD was triggered on June 6, 2000, when he caused to be delivered to the prosecuting attorney his written notice for final disposition of charges.[6] Consequently, Mr. Seenes argues, he should have been brought to trial prior to the conclusion of the 180–day period on December 3, 2000. Because he was not tried within that time frame, Mr. Seenes asserts that he is entitled to dismissal of the indictment. He also contends that his counsel was under no obligation to object to the trial date as it is the State's responsibility to ensure compliance with the 180–day rule. Furthermore, assuming arguendo that Mr. Seenes' lawyer was responsible for ensuring compliance with the rule, his lawyer's failure to object in this case should not constitute a waiver as Mr. Seenes' lawyer was appointed during the course of his arraignment and, therefore, had not had an opportunity to meet with Mr. Seenes and to acquire information regarding the 180–day time frame.

The State responds that the failure of Mr. Seenes' counsel to object at the October 11 hearing constitutes a waiver of his rights under Articles III(a) and V(c) of the IAD. The State further argues that even assuming Mr. Seenes' counsel was unaware of the IAD prior to the arraignment proceedings on October 11, the discussions between the circuit court, Mr. Seenes, his counsel, and the State on that date should have alerted Mr. Seenes' counsel that the IAD was implicated in this case. Consequently, he should not be able to

---

6. According to both the State and Mr. Seenes, the prosecuting attorney received Mr. Seenes' request for disposition on June 6, making the 180–day mark fall on December 3. In his brief, Mr. Seenes claims that the prosecuting attorney signed the "green card, accepting the certified mail delivery of notice" on June 6, 2000. His brief does not provide a citation to the record in this case supporting this assertion. However, the State's brief (also not citing to any portion of the record) agrees that June 6 is the date the prosecuting attorney received the request. Our review of the record does not disclose any green, return receipt card. However, at the December 29 hearing, the prosecuting attorney did not con- test that the 180–day cutoff was December 3. We further note that the record in this case reveals that the *Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Information or Complaints* was filed with the circuit clerk on June 5, 2000. We take it, therefore, that the record supports our conclusion that the prosecuting attorney received notice of Mr. Seenes' request for final disposition on June 6, 2000. *But cf. State v. Honaker,* 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101, n. 4 (1994) (noting that "[i]t is counsel's obligation to present this Court with specific references to the designated record that is relied upon by the parties.").

benefit from remaining silent on the trial schedule.

■ As Mr. Seenes correctly states, Article III(a)'s 180–day time frame commenced when his request for final disposition was actually delivered to the circuit court and the prosecuting attorney. Syl. pt. 2, *State v. Somerlot*, 209 W.Va. 125, 544 S.E.2d 52 (2000). *See also Fex v. Michigan*, 507 U.S. 43, 52, 113 S.Ct. 1085, 1091, 122 L.Ed.2d 406, 416 (1993) ("We hold that the 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."). Because Mr. Seenes' request for final disposition was delivered to the prosecuting attorney on June 6,[7] the 180–day period concluded on December 3.

■ At the October 11 arraignment hearing, it became apparent that the circuit court did not plan to commence trial until sometime in January, 2001. While the IAD was discussed during the hearing, the focus of the discussion was on Mr. Seenes' eligibility for bail and not on the IAD time frame. At no time during the October 11 hearing did any party mention the 180–day time limit. At this point in the October 11 hearing, we believe that it was incumbent upon the prosecuting attorney to alert the circuit court that this was a case where the 180–day rule was implicated. Of all the participants at the October 11 hearing, it was only the prosecuting attorney who had both the legal knowledge that the IAD was implicated in this case *and* the factual knowledge of when the Article III time frame commenced. We further note that it is also the State that controls the triggering of the IAD by the filing of a detainer. *See, e.g., United States v. Mauro*, 436 U.S. 340, 343–44, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329, 336 (1978); *Moore v. Whyte*, 164 W.Va. 718, 722, 266 S.E.2d 137, 140 (1980) ("[T]he IAD rules are not triggered until a detainer is lodged.")[8]

■ When a trial date is being set in IAD cases, the prosecuting attorney should always make it clear to a trial court on the record that the IAD time frame provisions are implicated so the trial court can discharge its responsibilities of a timely trial schedule. As we have said:

> "[T]here is first a burden on the defendant to substantially comply with the IAD request requirements by doing everything that could reasonably be expected. Once the defendant fulfills this burden, however, the burden is then placed upon the states to cooperate and bring the accused to trial within one hundred eighty days."

*State ex rel. Modie v. Hill*, 191 W.Va. 100, 103, 443 S.E.2d 257, 260 (1994) (quoting *State v. Ferguson*, 41 Ohio App.3d 306, 311, 535 N.E.2d 708, 713 (1987)).[9] *See also State v. Gamble*, 211 W.Va. 125, 130, 563 S.E.2d 790, 795 (2001) ("[T]he IAD, once triggered, places an obligation on authorities in this state to deal promptly with a prisoner incarcerated in another state, provided that the prisoner has met the requirements of the

---

7. See *supra* note 6.

8. The IAD does not define the term "detainer." *Cuyler v. Adams*, 449 U.S. 433, 436 n. 3, 101 S.Ct. 703, 706 n. 3, 66 L.Ed.2d 641, 646 n. 3 (1981); *Moore*, 164 W.Va. at 723, 266 S.E.2d at 140. However, the United States Supreme Court has defined a detainer under the IAD as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking . . . either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516, 520 (1985). We have defined a "detainer" under the IAD the same way. *Moore*, 164 W.Va. at 723, 266 S.E.2d at 140 (same).

9. Because our decision turns on the prosecuting attorney's obligation to inform the circuit court of the applicability of the IAD's time frame, we find it unnecessary to address the contentions of the parties based on *State v. Onapolis*, 208 W.Va. 521, 541 S.E.2d 611 (2000) and *New York v. Hill*, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). *See West Virginia Dep't of Health and Human Resources ex rel. Wright v. Brenda C.*, 197 W.Va. 468, 471 n. 2, 475 S.E.2d 560, 563 n. 2 (1996) (per curiam) ("Because we dispose of this case on other grounds, we do not address these contentions."); *In re Griffiths*, 413 U.S. 717, 722 n. 12, 93 S.Ct. 2851, 2855 n. 12, 37 L.Ed.2d 910, 916 n. 12 (1973) ("Because we dispose of the case on other grounds, we do not reach this claim.")

statute[.]").[10]   When the State fails in its obligation to assure compliance with the IAD's time limitations, Article V(c) directs, in mandatory terms, that the indictment be dismissed.[11]   *See Moore,* 164 W.Va. at 725, 266 S.E.2d at 141.   Thus,

> [t]he failure of the State to bring the accused to trial within 180 days following the State's receipt of the petitioner's notice of imprisonment and request for final disposition of the case, pursuant to the Agreement on Detainers, W. Va.Code, 62–14–1, article III(a) and article V(c) [1971], mandates the dismissal of the indictments pending against the petitioner . . . .

Syl., in part, *State ex rel. Modie v. Hill,* 191 W.Va. 100, 443 S.E.2d 257 (1994).   Because the State failed to assure that Mr. Seenes was brought to trial in accordance with the time limitations established in the IAD, we find that the circuit court erred by refusing to grant Mr. Seenes' motion to dismiss.

## IV.

### CONCLUSION

The judgment of the Circuit Court of Doddridge County is reversed. This matter is remanded with direction to dismiss with prejudice the indictment against Mr. Seenes as required by Article V(c) of the IAD.

Reversed and remanded.

---

10.   The circuit court also based its ruling denying the motion to dismiss upon a theory that the guilty plea hearing set for October 31 acted as a tolling event or a continuance.   In its brief to this Court, the State agrees that "such was not a necessary and reasonable continuance for good cause that tolled or extended the IAD's trial clock."   While we are not bound to do so, *see, e.g.,* Syl. pt. 8, *State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991), we agree with the State that the circuit court's tolling or continuance rationale is erroneous.

11.   As we noted earlier in this opinion, Article V(c) of the IAD requires that:

> [I]n the event that an action on the indictment . . . on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III . . . hereof, the appropriate court of the jurisdiction where the indictment . . . has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.